IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK G. SCARDINO and : | |
| ANNE C. SCARDINO, : | CIVIL ACTION |
|     Plaintiffs, : | |
| : | |
|     v. : | |
| : | |
| AMERICAN INTERNATIONAL : | |
| INSURANCE COMPANY, : | No. 07-282 |
|     Defendant. : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                     November 2, 2007

      Plaintiffs Frank G. and Anne C. Scardino bring this action against Defendant American International Insurance Company ("AIG"). Plaintiffs dispute the amount paid to them by Defendant following a fire that destroyed their insured home. Plaintiffs assert three breach of contract claims, a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and a bad faith claim against Defendant. Plaintiffs also assert an alternative theory of negligence and seek alternative remedies of a declaratory judgment and reformation. Presently before the Court are the parties' cross-motions for summary judgment: (1) by Plaintiffs on the discrete issue of whether they built their new home at the "same location" as their insured home, thus meeting their obligations under the insurance policy; and (2) by Defendant on each of Plaintiffs' claims. For the reasons set forth below, Plaintiffs' motion is denied, Defendant's motion is granted, and all claims are dismissed.[1]

**I.    BACKGROUND**

---

[1] As the late poet James Whitcomb Riley famously said, "When I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck." This case is the embodiment of the obvious, as pointed out by Riley's quote.

On June 25, 2005, Plaintiffs' home at 200 Ithan Creek Road, Villanova, Pennsylvania was destroyed by a fire. (Compl. ¶ 8.) Plaintiffs insured their home with AIG, first through a policy from November 2003 - November 2004, and then via a renewal of that policy from November 2004 - November 2005. (Def.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. Ex. 1 [hereinafter Policy] & Ex. 2 [hereinafter Renewal].) Plaintiffs had negotiated the Policy through their own insurance broker, who suggested an initial dwelling coverage limit of $1,561,000 and an initial contents coverage limit of $1,293,289. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. [hereinafter "Def.'s Mem."] at 4; Policy at PCG 1493.) This coverage limit had been the Scardinos' prior limit from a Chubb insurance policy. (Def.'s Mem. at 4.) Rather than conducting its own appraisal of the Scardino home, AIG adopted the Chubb limit proposed by Plaintiffs' broker. (*Id.* at 5.) In November 2004, when Plaintiffs renewed their policy, Defendant raised the dwelling coverage limit to $1,639,050 and the contents coverage limit to $1,358,773. (*Id.* at 4; Renewal at PCG 0044.)

Following the fire, Plaintiffs submitted claims for coverage to AIG through their public adjustor. (Compl. ¶ 17.) Under the Renewal, Plaintiffs are entitled to either: (1) the amount that it costs to rebuild the home if rebuilt at the same location, called Guaranteed Rebuilding Cost coverage; or (2) the coverage limit set in their policy if Plaintiffs chose not to build at same location. (Renewal at PCG 0051.)

Under the belief that Plaintiffs were going to rebuild at the same location, AIG began to adjust the loss and prepared an initial estimate of the reconstruction cost. (Def.'s Mem. at 7.) Plaintiffs disagreed with AIG's initial appraisal and hired their own contractor to prepare an estimate. (*Id.*) In accordance with the Renewal, because the parties could not agree on an estimate,

2

the parties submitted the dispute to an appraisal process. (*Id.*; Renewal at PCG 0062.) In the interim, Plaintiffs built a new house at 402 Boxwood Road in Rosemont, PA. (Def.'s Mem. at 6.) They have since received township approval to subdivide 200 Ithan Creek Road into three lots, upon which they plan to develop and sell three new houses. (Pls.' Am. Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. [hereinafter Pls.' Opp'n at 36.)

The appraisal resulted in an Appraisal Award finding that the cost to repair or replace Plaintiffs' home was $2,916,900.77. (*Id.* at 8.) Defendant, however, refused to pay Plaintiffs the appraisal amount because they did not rebuild their home at the same location. Instead, Defendant has paid Plaintiffs the dwelling coverage limit of $1,639,050 and the contents coverage limit of $1,358,773. (*Id.*) Plaintiffs allege that they did build at the same location, so they are entitled to the Guaranteed Rebuilding Cost coverage, which, per the Appraisal Award, amounts to $2,916,900.77. (Compl. ¶ 21.) Plaintiffs further allege that the coverage limit did not adequately insure their property, and that Defendant breached its obligation to conduct a pre-loss valuation that would have resulted in higher limits. (*Id.* ¶ 37.)

**II.   STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party

demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.    DISCUSSION**

    **A.    Plaintiffs Fail to Establish a Breach of Contract Claim Against Defendant**

Plaintiffs lodge two breach of contract claims against Defendant. In Count I, Plaintiffs argue that they were entitled to Guaranteed Rebuilding Cost coverage of $2,916,900.77, rather than the coverage limit of $1,639,050 that they have already received from Defendant. In the alternative, in Count V, Plaintiffs seek a declaratory judgment regarding their right to collect the Guaranteed Rebuilding Cost coverage in the future. In Count II, Plaintiffs dispute that they were adequately insured by the coverage limit, and that Defendant breached its contractual obligation by failing to appraise their home at a higher value.

    *1.    Plaintiffs are not entitled to Guaranteed Rebuilding Cost coverage*

Pursuant to the terms of the Renewal, Plaintiffs are entitled to Guaranteed Rebuilding Cost coverage only if they "repair or rebuild [their] house . . . at the same location." (Renewal at PCG 0051.) Plaintiffs assert that by building a new residence at 402 Boxwood Road in Bryn Mawr, Pennsylvania, in place of their destroyed property at 200 Ithan Creek Road in Villanova,

Pennsylvania, they have complied with the Renewal's "same location" condition. Defendant's reply that the "same location" provision limits Plaintiffs' ability to receive Guaranteed Rebuilding Cost coverage to rebuilding at 200 Ithan Creek Road.

          a.      *Plaintiffs did not rebuild their house at the same location*

Under Pennsylvania law, which the parties and Court agree govern this diversity action, interpretation of an insurance contract is generally a question of law properly decided by the court. *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005); *see also Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999).

Once the insured meets its initial burden of establishing coverage under an insurance policy, *see Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. 1995), the court will examine the words used in the policy to establish the parties' intentions. *See 401 Fourth St.*, 879 A.2d at 171. When interpreting an insurance policy, "the words of the insurance policy must be construed in their natural, plain, and ordinary sense." *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997). If the policy's language is clear and unambiguous, the court must enforce its provisions. *Med. Protective Co.*, 198 F.3d at 103. Moreover, a court should read a policy to avoid ambiguities and give effect to all of its provisions. *Id.* If a policy provision is ambiguous, on the other hand, it must be construed in favor of the insured and against the insurer. *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006).

Despite Plaintiffs' best efforts to blur the meanings of the words "same" and "location," and the term "same location," the relevant contractual terms are simply not ambiguous, and must therefore be given effect. Plaintiff accurately notes that Defendant failed to define these terms in the Renewal, and had it done so, such definitions would be dispositive. *See J.C. Penney Life Ins. Co.*

*v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004).  However, as this Court has previously noted, "the failure to define a term should not send the Court scurrying to a dictionary hunting for ambiguity."  *Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.*, 432 F. Supp. 2d 488, 502 (E.D. Pa. 2006), *aff'd*, Civ. A. No. 06-2755, 2007 WL 2772061 (3d Cir. Sept. 25, 2007).  Yet Plaintiffs ask this Court to scurry to new heights.

Common sense and Plaintiffs' own supplied dictionary definitions illustrate that "same location," in the context of homeowner's insurance, refers to a specific address.  Though Plaintiffs seek to parse "same" from "location," "a single word in an insurance policy should not be read in a vacuum."  *Id.* at 495.  Moreover, simply because a word in a policy may have several definitions, the terms need not be ambiguous; "if multiple definitions alone created ambiguity, insurance policies would either lose all meaning or would devolve into epic tomes."  *Id.* at 501.

The balance of the Renewal, the necessary context for defining the terms, demonstrates that "same location" is not ambiguous.  *Melrose Hotel Co.*, 432 F. Supp. 2d at 495 (noting that "specific provisions in a policy gain meaning based on their context in the policy as a whole").  The Guaranteed "Rebuilding" Cost provision that Plaintiffs dispute requires that the insured "repair" or "rebuild" their house or permanent structure at the same location in order to recover the "reconstruction" cost of their new home.  This Court need not consult the parties' many dictionaries to know that simply building a brand new house at a different address is not synonymous with repairing or rebuilding a damaged home across town.

Further, while the Renewal does not specifically define "location," the term acquires definition by its consistent use throughout the policy.  Read in context, it clearly refers to a specific address.  For example, following the summary of coverages and coverage limits for 200 Ithan Creek

Road, the Renewal states, "A deductible of $2,500 applies to *this location* unless a special deductible applies" (Pls.' Statement of Undisputed Material Facts Ex. A at pp. 3-7) (emphasis added).  The Renewal's "Location Extension Schedule Page" defines "Summary of Coverage *by Location*" and proceeds to list the address of each of Plaintiffs' properties insured by Defendant (*Id.* at 5) (emphasis added).  It is beyond reason that "location" is used to indicate "address" throughout the Renewal, but when "same" is placed in front of it, its meaning expands to an undefined and undefinable degree.

Plaintiffs instead seek to define "same" as "something identical with or similar to another"[2] or "alike in degree, kind, character or quality" (Pls.' Mot. for Summ. J. ¶ 5) and "location" as "situation; position in space; *place where a factory, house, etc. is*." (*Id.* ¶ 6) (emphasis added). Plaintiffs ask this Court to conclude that 200 Ithan Creek Road and 402 Boxwood Road thus qualify as the "same location" because they are separated only by "a mere five minute drive." (*Id.* ¶ 7.)

It is common knowledge that when an insured purchases homeowner's insurance, he buys coverage for his individual properties, not for a broad, undefined expanse of miles of space over which he has no ownership.  Plaintiffs' argument fails because it contains no limiting principle: if "same location" can encompass two separate addresses because they are similar and alike in kind, then the fact that Plaintiffs' properties are five minutes apart is irrelevant; indeed, there are arguably properties in greater Delaware County, or in all of Pennsylvania, or even the entire United States, that may well be more similar and alike in kind than 200 Ithan Creek Road and 402 Boxwood Road.

Because Plaintiffs chose to build anew at a location other than 200 Ithan Creek Road, they

---

[2] Defendant correctly notes that Plaintiffs' cited definition of "something identical with or similar to another," from Merriam-Webster's Collegiate Dictionary, 1099 (11th ed. 2003), is for the pronoun form of "same," whereas the Renewal uses "same" as an adjective.  This Court need not pontificate on the diagraming of sentences to understand that Plaintiffs' selective representation does not create an ambiguity where there is not one.

did not comply with the contract, and thus are not entitled to Guaranteed Rebuilding Cost coverage. Accordingly, Plaintiffs' motion for summary judgment on this issue is denied, and Defendant's motion for summary judgment on Count I is granted.[3]

### b. Plaintiffs' argument regarding equitable estoppel does not disturb the Court's ruling

In the alternative, Plaintiffs allege that Defendant should be equitably estopped from asserting the "same location" limitation, because Plaintiffs claim that Defendant prevented them from rebuilding their home at 200 Ithan Creek Road. Plaintiffs' argument fails as a matter of law.

The elements of equitable estoppel are (1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to answer the estoppel; and (3) no duty of inquiry on the party seeking to assert estoppel. *Stolarick v. Stolarick*, 363 A.2d 793, 799 (Pa. Super. 1976); *see also Storms ex rel. Storms v. O'Malley*, 779 A.2d 548, 560 (Pa. Super. Ct. 2001) (requiring "misleading words, conduct, or silence by the party against whom estoppel is asserted"); *Boyd v. Rockwood Area School District*, 907 A.2d 1157, 1168 (Pa. Commw. Ct. 2006) (requiring "intentional or negligent misrepresentation of some material fact).

Even assuming that Plaintiffs' allegation that Defendant told them they could not rebuild until Defendant released 200 Ithan Creek from its investigation, as this Court must, Plaintiffs fail to

---

[3] The denial of summary judgment for Plaintiffs on the "same location" argument extends to contents coverage. Under the Renewal, if Defendant pays more than the coverage limit, Defendant is obligated to automatically increase the amount of contents coverage proportionally to the amount by which the house coverage was increased. (Renewal at PCG 0052.) Because Plaintiffs failed to comply with their building obligations under the Renewal, Defendant is not required to pay Guaranteed Rebuilding Cost coverage in excess of the coverage limit. Thus, Plaintiffs' attempt to extend this coverage amount to contents coverage must fail.

allege that Defendant mislead or misrepresented anything to Plaintiffs in any way. *See Northwestern Nat'l. Bank v. Commonwealth*, 57 A.2d 20, 23 (Pa. 1942) ("In the absence of expressly proved fraud, there can be no estoppel based on the acts or conduct of the party sought to be estopped, where they are as consistent with honest purpose and with absence of negligence as with their opposites"). Because Plaintiffs do not plead negligent or intentional misrepresentation, they fail to make out a prima facie case of equitable estoppel.

                              c.        *Plaintiffs' claim for declaratory judgment fails*

Count V of Plaintiffs' Complaint asks this Court, in the alternative, to issue a declaratory judgment that by subdividing 200 Ithan Creek Road into three properties and building three new homes thereupon, Plaintiffs have "rebuilt" their "house" at the "same location," triggering the Guaranteed Rebuilding Cost provision of the Renewal. The plain language of the Renewal again governs, and precludes the relief sought.

Under the Guaranteed Rebuilding Cost provision of the Renewal, "reconstruction cost" is limited to "the lesser of the amount at the time of the loss required to (a) restore or repair a structure; or (b) replace or rebuild a structure at the same location; *with materials of like kind and quality*" (Renewal at PCG 0051) (emphasis added). Plaintiffs' argument that developing their former property into three new properties is synonymous with replacing or rebuilding their destroyed house stretches beyond the bounds of reason and clearly falls beyond the Renewal's intended scope. It is simply implausible that any reasonable fact finder could construe the plain meaning of "materials of like kind and quality" to include those materials necessary to construct three separate homes where there was once one. While Plaintiffs certainly have every right to do what they wish with 200 Ithan Creek Road now that they have moved to 402 Boxwood Road, their insurance policy served

to compensate them for their covered loss, not to provide a blank check to fund their future development projects.

Accordingly, Defendant's motion for summary judgment pertaining to Count V is granted.

### 2. *Plaintiffs fail to establish a contractual obligation on part of Defendant to conduct a pre-loss home valuation*

Counts II, VIII, and IX of the Complaint rest on Plaintiffs' argument that the Renewal, or alternatively, the Renewal read in conjunction with Defendant's marketing materials, obligated Defendant to provide Plaintiffs with a pre-loss home valuation, and that Defendant breached that contractual obligation by failing to do so. Plaintiffs aver that had Defendant conducted the valuation, Defendant would have insured Plaintiffs' destroyed property for at least one million, two hundred thousand dollars more than provided by the coverage limit on the Declaration Page, which Defendant has already paid out to Plaintiffs. Plaintiffs' arguments are unavailing.

#### a. *The "appraisal" provision of the Renewal is not ambiguous*

The basic principle of insurance contract interpretation explained above applies with equal force here: "when the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Riccio*, 705 A.2d at 426. Plaintiffs point to only one provision in the Renewal to assert the right to a pre-loss home valuation. The Renewal provides, "We may change the amount of coverage shown on the Declarations Page when the policy renews or when appraisals are conducted to reflect current costs and values." (Renewal at PCG 0052.) Ironically, while Plaintiffs argue the ambiguity of the simple term "same location," they simultaneously argue that the plain meaning of "when appraisals are conducted" means that Defendant is obligated to conduct a pre-loss home valuation. Their conclusion is invalid.

The plain meaning of the terms "We may change" and "when appraisals are conducted" suggest only one reasonable interpretation: that Defendant reserves the right to conduct appraisals and may change the amount of coverage, not that Defendant affirmatively assumes an obligation to do so. As a starting point, "We may change" clearly establishes a possibility rather than a certainty. In tandem, "when appraisals are conducted" can only imply Defendant's right to issue such a change in coverage if and when Defendant chooses to conduct an appraisal. The clause contains no language mandating an appraisal at any time, and certainly not at the implementation of the policy. To the contrary, "We may change" suggests that any change would necessarily be post-implementation, making Plaintiffs' argument for an initial, pre-loss valuation all the more suspect. The plain meaning of the cited provision simply does not establish the right to a pre-loss valuation. As this Court finds no ambiguity in the terms of the contract, it need not consider Plaintiffs' proposed parole evidence. *Yocca v. Pittsburgh Steelers Sports*, 854 A.2d 425, 436 (Pa. 2004) (citing *Gianni v. Russel & Co.*, 126 A. 791, 792 (1924)).

Plaintiffs' alternative theories are likewise specious. Plaintiffs point to the reasonable expectation doctrine, which indicates that in certain limited circumstances, "where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy, that expectation will prevail over the language of the policy." *Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994). Plaintiffs argue that Defendant's website and other marketing materials created such a reasonable expectation of a pre-loss home valuation, and thus their expectation trumps the language of their complete legal agreement.

Plaintiffs, sophisticated investors and real estate developers, who had hired their own insurance broker, *twice* entered into agreements with Defendant which explicitly defined the terms

of their relationship. Plaintiffs' coverage is clearly and unambiguously delineated in their written agreement. Under the circumstances, the reasonable expectation doctrine does not apply.[4]

Accordingly, Defendant's motion for summary judgment on Count II is granted.

### b. *Plaintiffs' claim for reformation fails*

In the alternative, Plaintiffs ask this Court to reform the contract to reflect their allegedly mistaken belief in the right to a pre-loss valuation. Reformation of a contract is typically available only in cases of mutual mistake, and even then, only when the evidence supporting reformation is clear and convincing. *See, e.g.*, *Jones v. Prudential Prop. & Cas. Ins. Co.*, 856 A.2d 838, 844 (Pa. Super. Ct. 2004); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981). Plaintiffs present

---

[4] The facts of the cases cited by Plaintiffs demonstrate that the circumstances contemplated by the doctrine are readily distinguishable. Plaintiffs rely primarily on *Barth v. State Farm Fire & Cas. Co.*, 257 A.2d 671 (Pa. Super. 1969). In *Barth*, an insurance broker filled out a coverage schedule with the insured on the back of a brochure. The brochure depicted a picture of a burglary taking place while the business was closed. When the insured later suffered a burglary after business hours and sought coverage under his policy, he was informed that the policy, received weeks later, limited his coverage to burglaries during business hours, in direct contravention of the brochure. The court determined that if the insurer could prove that he reasonably relied on the illustration in the brochure, it could be considered part of the contract.
    Unlike *Barth*, where literally writing the coverage schedule on the back of the brochure inextricably linked the advertisement from the contract, Plaintiffs agreed to a Renewal separate from and making no reference or allusion to any marketing materials. Further, while the *Barth* court relied on the fact that the illustration and the written policy could not coexist, Plaintiffs argue that the written "...when appraisals are conducted..." and the marketing materials both create a right to a pre-loss valuation. *Barth* simply does not control in these circumstances.
    Plaintiffs' other cited cases are even less persuasive. In *Tran v. Metropolitan Life Ins. Co*, 408 F.3d 130 (3d Cir. 2005), the insured's reasonable expectation was premised on his limited knowledge of English, clearly inapplicable here. In *Bensalem Township*, the court specifically noted that the reasonable expectation doctrine does not apply if the insured was aware of the absence of the clause in the written document at the time the policy renewed. 38 F.3d at 1312 ("If [the insured] was aware of the change in the exclusion provision before it elected to renew its policy with Insurers...then Insurers must prevail."). Thus, even if Plaintiffs initially believed that they were entitled to a pre-loss home valuation, they waived their right to invoke the reasonable expectation doctrine when they agreed to the Renewal, the first page of which evinced that there had been no valuation.

no evidence that the absence of an express obligation on the part of Defendant to perform a pre-loss home valuation in the Renewal is a mistake.[5]

Accordingly, Defendant's motion for summary judgment on Count VIII is granted.

            c.      *The "gist of the action" doctrine precludes Plaintiffs' negligence claim*

The "gist of the action" doctrine "bars a party to a contract from asserting a tort claim against the other party if the essential nature or 'gist' of the claim is contractual." *KSM Assocs v. ACS State Healthcare*, Civ. A. No. 05-4118, 2006 WL 847786, at *3 (E.D. Pa. Mar. 30, 2006). The doctrine plainly applies here. Plaintiffs and Defendant had an enforceable contract, and Plaintiffs state unequivocally that "the largest single element of the Scardinos' claim is the difference between the *stated policy limits* for dwelling of $1,639,050 and the actual cost to rebuild their house as determined by binding appraisal: $2,916,900.77" (emphasis added). (Pls.' Opp'n at 2.) Clearly, the dispute between the parties sounds in contract, not tort.[6]

Accordingly, Defendant's motion for summary judgment regarding Count IX is granted.

    **B.**    **The Parole Evidence Rule Bars Plaintiffs' Unfair Trade Practices and Consumer Protection Law Claims**

---

[5] Plaintiffs note that reformation based on unilateral mistake is possible in Pennsylvania if the party against whom reformation is sought has sufficient knowledge of the mistake to justify an inference of fraud or bad faith. *Dudash v. Dudash*, 460 A.2d 323, 327 (Pa. Super. Ct. 1983); *see also Kearns v. Minnesota Mut. Life Ins. Co.*, 75 F. Supp. 2d 413, 419 (E.D. Pa. 1999). Yet Plaintiffs present no evidence that they ever communicated their mistaken belief in the right to a pre-loss valuation to Defendant, and again, their agreement to renew the Policy evinces the contrary.

[6] Plaintiffs' reliance on *Rapidigm, Inc. v. ATM Mgmt. Serv. LLC*, 63 Pa. D. & C. 4th 234, 240 (Pa. Com. Pl. 2003) is misplaced. For the reasons explained above, the parole evidence rule bars consideration of any representations made by Defendant on its website regarding the quality of the services to be provided.

Plaintiffs raise numerous violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. All fail as a matter of law.

The UTPCPL provides a private right of action for "any person who purchases . . . goods or services primarily for personal, family, or household purchases and thereby suffers any ascertainable loss of money or property" because the seller engaged in "unfair or deceptive business practices." 73 PA. CONS. STAT. ANN. §§ 201-9.2(a); 201-3 (2007). Because UTPCPL claims involve representations made to induce purchase, there is an inherent conflict with the parole evidence rule.

In order to raise a claim under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result. *See, e.g.*, *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001). As a matter of law, plaintiffs cannot justifiably rely on representations excludable by the parole evidence rule, *Yocca*, 854 A.2d at 439, unless plaintiffs allege fraud in the execution, rather than the inducement, of a contract. *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 206-7 (Pa. 2007).

Plaintiffs claims are, by nature, fraud in the inducement claims, and thus parole evidence is barred. Plaintiffs bring claims under subsections 201-2(4)(v),[7] (vii),[8] (ix),[9] and (xxi),[10] all of which contemplate misrepresentations designed to induce a buyer to purchase a good or service. For each

---

[7] Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.

[8] Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

[9] Advertising goods or services with intent not to sell them as advertised.

[10] Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

claim, Plaintiffs rely solely on Defendant's representations, made on its website and in its marketing materials. As these materials are inadmissible under the parole evidence rule, Plaintiffs' UTPCPL claims must fail.[11]

Accordingly, Defendant's motion for summary judgment is granted as to Count VI.

### C. Plaintiff Fails to Establish Bad Faith on Part of Defendant.

Under Pennsylvania law, a finding of bad faith on part of an insurance company requires an initial finding that the insurer lacked a reasonable basis for denying benefits. 42 PA. CONS. STAT. ANN. § 8371 (2007). Since this Court holds as a matter of law that Defendant had reasonable bases for denying benefits – namely, that Plaintiffs failed to rebuild at the same location, and that Defendant was under no obligation to perform a pre-loss home valuation that would raise Plaintiffs' coverage limit – there can be no finding of bad faith. *Kelly v. Allstate Ins. Co.*, 138 F. Supp. 2d 657, 662-63 (E.D. Pa. 2001); *see also Sheikh v. Travelers Personal Ins. Co.*, Civ. A. No. 06-1477, 2007 WL 2571451 (E.D. Pa. Aug. 31, 2007).

Accordingly, Defendant's motion for summary judgment regarding Count X is granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment to Defendant AIG,[12] and dismisses all claims. An appropriate Order follows.

---

[11] In the alternative, Plaintiffs aver that Defendant violated section 210-2(4)(xxi), fraud in the execution. Plaintiffs fail to prove that "the parties agreed that certain terms would be included in the written contract, and that the terms were omitted by fraud." *1726 Cherry St. P'ship v. Bell Atl. Prop., Inc.*, 653 A.2d 663, 666 (Pa. Super. Ct.1995). Plaintiffs' requested leave to amend, as this would be highly prejudicial to the Defendant given the late date.

[12] Defendant's motion for summary judgment on Count IV and VII are granted as unopposed. Additionally, the parties have resolved Count III and the contents claim included in Count I, per their letter to the Court on November 1, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK G. SCARDINO and | : | |
| ANNE C. SCARDINO, | : | CIVIL ACTION |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| AMERICAN INTERNATIONAL | : | |
| INSURANCE COMPANY, | : | No. 07-282 |
|     Defendant. | : | |

## ORDER

**AND NOW**, this **2nd** day of **November**, **2007**, upon consideration of Plaintiffs' and Defendants' motions for summary judgment, the responses thereto, the arguments made by the parties at oral argument, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Plaintiffs Frank G. and Anne C. Scardinos' Motion for Partial Summary Judgment (Document No. 16) is **DENIED**.

2. Defendant AIG's Motion for Summary Judgment (Document No. 17) is **GRANTED**.

3. The Clerk of Court is directed to close this case.

BY THE COURT:

_/s/ Berle M. Schiller_
**Berle M. Schiller, J.**